**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

WILLIAM M. DEAN,

                                    Plaintiff,                    9:22-cv-00746 (BKS/ML)

v.

CATHY Y. SHEEHAN, Deputy Commissioner and
Counsel; DAVID DEBEJIAN, Deputy Superintendent of
Programs; PAT COLLVER, Acting Deputy Superintendent
of Programs; C.F. LEONE, Director of Correctional
Library Services, NYS DOCCS; JEFFREY MCKOY,
Deputy Commissioner of Programs, NYS DOCCS,

                                    Defendants.

**Appearances:**

*Plaintiff pro se:*
William M. Dean
11-B-0996
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

*For Defendants:*
Letitia James
Attorney General of the State of New York
Aimee Cowan
Assistant Attorney General
300 South State Street, Suite 300
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

I.      **INTRODUCTION**

        Plaintiff William M. Dean filed this action pro se under 42 U.S.C. § 1983 asserting

claims of mail tampering and denial of access to courts in violation of the First Amendment

against Defendants Cathy Sheehan, Deputy Commissioner and Counsel for the New York State Department of Corrections and Community Supervision ("DOCCS"), Corrine Leone, DOCCS Supervising Librarian and Law Library Coordinator, Jeffrey McKoy, DOCCS Deputy Commissioner for Program Services, David Debejian, Deputy Superintendent of Programs at Marcy Correctional Facility ("Marcy"), and Patrick Collver, the Acting Deputy Superintendent of Programs at Marcy. (*See generally* Dkt. No. 45). On June 21, 2024, Defendants filed a motion for summary judgment under Federal Rule of Civil Procedure 56 seeking dismissal of the Amended Complaint. (Dkt. No. 103). The briefing on this motion has taken a tortured path.

The Court granted Plaintiff six extensions to file a response to Defendants' motion, the last of which expired on January 31, 2025. (Dkt. Nos. 106, 109, 115, 119, 121, 130). On February 14, 2025, Plaintiff filed a 3,000-page response to Defendants' motion for summary judgment. (*See* Dkt. Nos. 132, 133, 134, 135, 136, 137, 138, 140, 141, 142, 143, 144). As Plaintiff offered no reason for the untimely filing, the Court ordered Plaintiff to show "good cause" for failing to comply with the Court's deadline and set a briefing schedule. (Dkt. No. 139 (citing Fed. R. Civ. P. 16(b)(4))).

On February 20, 2023, prior to the completion of briefing on the order to show cause, United States Magistrate Judge Miroslav Lovric, to whom Defendants' motion for summary judgment had been referred, issued a Report and Recommendation that Defendants' motion be granted and the Amended Complaint be dismissed on the ground that Plaintiff had failed to exhaust his administrative remedies. (Dkt. No. 145). On the understanding that the undersigned would determine the timeliness of Plaintiff's response, Magistrate Judge Lovric did not consider "the contents of Plaintiff's opposition for purposes of [the] Report and Recommendation." (*Id.* at 2 n.1).

2

On March 14, 2025, this Court issued an Order finding Plaintiff had established that there was good cause for accepting Plaintiff's response to Defendants' motion for summary judgment as timely, allowing Defendants the opportunity to file a reply to Plaintiff's response, and advising the parties that it would consider Plaintiff's response in connection with the Report and Recommendation. (Dkt. No. 151). As Plaintiff has filed objections to the Report and Recommendation, (Dkt. No. 149), and Defendants have filed a reply, (Dkt. No. 160), this matter is, finally, fully briefed. The Court rejects the Report and Recommendation as moot in light of the additional briefing and, for the reasons that follow, grants Defendants' motion for summary judgment.

## II.    REPORT AND RECOMMENDATION

Magistrate Judge Lovric recommended that Defendants' motion for summary judgment be granted on the ground that Plaintiff failed to exhaust administrative remedies with respect to his remaining First Amendment mail tampering and access to the courts claims. (Dkt. No. 145). Finding the "relevant time period for this action is July 15, 2021, when Plaintiff was transferred from [Collins Correctional Facility] to Marcy, through November 15, 2022," Magistrate Judge Lovric determined that the only evidence that Plaintiff filed a grievance was his deposition testimony that "he filed a grievance on April 27, 2021," while he was still at Collins, (*id.* at 5), and found no evidence that "Plaintiff file[d] any grievances at Marcy at all," during the relevant time period, (*id.* at 6). Magistrate Judge Lovric therefore recommended that Defendants' motion be granted "for the reasons set forth in their memorandum of law based on Plaintiff's failure to

exhaust his administrative remedies." (Dkt. No. 145, at 25 (citing Dkt. No. 103, Attach. 1 at 11–16)).[1]

When evaluating Defendant's motion for summary judgment, Magistrate Judge Lovric was bound by the record before him and unable to consider Plaintiff's response submissions. Having subsequently determined that Plaintiff's response submissions were not untimely and having invited a reply from Defendants, the motion for summary judgment is no longer unopposed and must be considered in light of the entire record. Accordingly, the Court rejects the Report and Recommendation as moot and considers Defendant's motion for summary judgment de novo.

## III.    BACKGROUND[2]

### A.    Collins Correctional Facility

On April 4, 2021, Plaintiff was transferred from Attica Correctional Facility to Collins Correctional Facility. (Dkt. No. 45, ¶ 1; Dkt. No. 103-2, ¶ 5; Dkt. No. 132-3, ¶ 5). At that time, "Plaintiff had more than 18 legal actions pending in various courts." (Dkt. No. 103-2, ¶ 4; Dkt. No. 132-2, ¶ 4). Plaintiff states that while at Attica, he had "no problems with using the advance

---

[1] Magistrate Judge Lovric accepted Defendants' statement of undisputed facts without considering the verified Amended Complaint or the context in which Defendants' record citations arose. For example, Magistrate Judge Lovric recommended that the Court find Defendants' assertion that "[t]he relevant time period for this action is July 15, 2021 (when Plaintiff was transferred to Marcy), through November 15, 2022" to be "supported" based principally on a partial sentence in prior Order summarizing Amended Complaint. (Dkt. No. 145, at 4–5; *see* Dkt. No. 44, at 6). However, a basic review of the Order (or of the Amended Complaint) dispels any notion that this action solely concerns events at Marcy. (*See supra* Part IV.B.1). In any event, as the Report and Recommendation is moot in light of the additional briefing, the Court does not further consider it.

[2] The facts are drawn from Defendants' statement of material facts and Plaintiff's response to Defendants' statement of material facts, (Dkt. Nos. 103-2, 132-3), to the extent the facts are supported by "particular parts of materials in the record," including, among other things, depositions, affidavits or declarations, or other documents. Fed. R. Civ. P. 56(c). The Court has also considered Plaintiff's Amended Complaint, which is verified. (Dkt. No. 45); *see Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (explaining that a "verified complaint is to be treated as an affidavit . . . and [may] be considered in determining whether material issues of fact exist[.]") (citations omitted). The facts are construed in the light most favorable to Plaintiff as the non-moving party. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

system for obtaining legal copies and sending legal mail."[3] (Dkt. No. 45, ¶¶ 172–73). Plaintiff

asserts that in order "to prevent any problems with getting legal copies made and sending legal

mail," he sent a letter to A. Schneider, the Deputy Superintendent of Programs ("DSP

Schneider") shortly after his arrival asking what was "required" to obtain postage and

photocopies, and that on April 7 and 13, 2021, he sent "advance requests" to DSP Schneider "for

$10.50" and for "$6.80 for legal copies" but that he received no response to his inquiry or

requests. (*Id.* ¶¶ 2–4)). DSP Schneider is not a defendant in this action.

On April 17, 2021, Plaintiff sent a letter to Defendant Sheehan, DOCCS Deputy Acting

Commissioner and Counsel, about difficulties obtaining legal copies:

> I have been at Collins Correctional Facility for the past two weeks
> and have tried to get legal copies to notify several agencies, courts
> and government officials that I have moved, but have been denied
> access to copies.
>
> The story and procedure changes everytime I go to the law library,
> and when I do what was told and nothing happens. I sent several
> notices to Administration here at Collins about the issue on my first
> day here to establish a working relationship to meet both of our
> needs. To meet their procedures and what they wish to do to resolve
> any  conflicts. I wrote the DSS DSP and Superintendent, with no
> responses.

(Dkt. No. 133, at 3).

---

[3] Under DOCCS Directive 4421, 7 N.Y.C.R.R. § 721.3(a)(3)(ii), each incarcerated individual receives "a weekly free postage allowance equivalent to five domestic first class one ounce letters," and "[t]o ensure that indigent incarcerated individuals maintain their right of access to the courts," facilities "shall . . . advance request[s]" for postage for legal mail "if the incarcerated individual has insufficient funds," and "the balance of unpaid previous advances . . . do not exceed $20." 7 N.Y.C.R.R. § 721.3(a)(3)(iv). However, even if an incarcerated individual does not qualify for an "advance" on postage because his unpaid balance exceeds $20, Directive 4421, facility staff must consult "with the department's office of counsel" before denying the request. *Id.*

DOCCS Directive 4483 governs "photocopying services," and provides that if an incarcerated individual "does not have sufficient funds for the purchase of copies . . . he is entitled to obtain an advance from the facility when he establishes that the documents sought to be copied are required by the courts and cannot be replicated longhand." (Dkt. No. 103-22, ¶ 7). "Advances may only be approved by the Law Library Supervisor, in consultation with the Law Library Administrator or the Office of Counsel." (*Id.*) (quotation marks omitted).

Plaintiff states that on April 17, 2021, DSP Schneider returned Plaintiff's "advance requests with a notice . . . denying requests for legal copies." (Dkt. No. 45, ¶ 6). Plaintiff asserts that on April 27, 2021, he filed a grievance regarding "legal copies and legal mail" with the "IGRC Office at Collins by facility mail as required." (*Id.* ¶ 7; Dkt. No. 132–3, ¶ 6; Dkt. No. 103-5, at 80). Plaintiff further asserts that he also sent a notice that day to DSP Schneider "about legal copies and legal mail," "quoted the proper [DOCCS] directives such as 4421. . . [and] 2788"[4] and "attached a copy of the Inmate Grievance" to the notice. (Dkt. No. 45, ¶ 7).

On or about May 4, 2021, Plaintiff received a memorandum from DSP Schneider:

> I am in receipt of your April 27, 2021 letter. The requested advance and the previously unpaid advances cannot exceed $20.00. Exceeding that amount can only be approved if you can show that the legal mail must be sent prior to your receipt of the following week's free postage allowance due to a court rule, statute of limitations or other legal deadline.
>
> You have failed to satisfy this requirement and your outstanding balance exceeds the $20.00 limit. Therefore, your request is denied.

(Dkt. No. 133, at 6).  DSP Schneider's memorandum did not reference any grievance.

On or about May 6, 2021, Plaintiff received a letter from Defendant DOCCS Supervising Librarian Leone in response to Plaintiff's April 17, 2021 letter to Sheehan." (*Id.* at 10). Leone advised Plaintiff to "refer" to DSP Schneider's April 27, 2021 memo if he "require[d] advance funds" for photocopies of legal matters and noted that DOCCS "Directives 4483 & 4421, should clarify any other concerns." (*Id.*).

---

[4] DOCCS Directive 2788, cited by Plaintiff, governs collection and repayment of inmate advances and obligations and "how and when a DOCCS facility will deduct money from an  account without the inmate's consent." *Liner v. Fischer*, No. 11-cv-6711, 2013 WL 1832316, at *1, 2013 U.S. Dist. LEXIS 62885, at *2 (S.D.N.Y. May 2, 2013) (quotation marks omitted).

On or about July 15, 2021,[5] Plaintiff was transferred from Collins to Marcy. (Dkt. No. 45, ¶ 24).

## B.    Marcy Correctional Facility

Plaintiff asserts that on July 22, 2021, he sent notice to the Marcy Superintendent and Deputy Superintendent of Programs, Defendant David Debejian ("DSP Debejian") regarding "legal copies and legal mail as to what they needed from Dean and what procedures they wished for Dean to follow for getting legal copies and sending legal mail, because he was indigent." (Dkt. No. 45, ¶ 25). Plaintiff states that on July 26, 2021, DSP Debejian responded, "telling him to do as always did and follow directives." (*Id.* ¶ 26; *see id.* ¶ 27 (averring that during orientation, DSP Debejian told Plaintiff to "do as he has done in prior facilities" as "the rules apply no matter what facility he is in")).

Plaintiff asserts on September 24, 2021, the law library supervisor returned "11 disbursement forms and advance forms" to Plaintiff and explained that DSP Debejian was "not mailing them because Dean is indigent and over his limit and required additional proof from the courts." (*Id.* ¶¶ 36–38). In a memo dated that same day, DSP Debejian explained that he was denying Plaintiff's requested advance for legal postage because Plaintiff's "balance of unpaid previous advances for legal mail postage exceed[ed] $20" and "the request must include proof of a legal deadline" or "justification for the advance." (Dkt. No. 103-23, at 1). In his declaration DSP Debejian, states that at that time, "Plaintiff's advancements for postage totaled $975.10 and his advances for legal copies totaled $908.56," and that Plaintiff had not provided proof of a

---

[5] Plaintiff states in the Amended Complaint that on July 14, 2021, while at Collins, he was told "to packup everything" as "he was being transferred to another facility" and that he was "located at Marcy C.F. as of July 16, 2021." (Dkt. No. 45, ¶¶ 23–24). The actual date of transfer is immaterial.

legal deadline demonstrating that the mail must be sent prior to the next week's free postage allowance. (Dkt. No. 103-22, ¶ 11).

In early October 2021, Plaintiff and DSP Debejian met and discussed Plaintiff's requests for legal mail and copies. (Dkt. No. 103-25, at 1; Dkt. No. 45, ¶ 53). According to a memorandum dated October 8, 2021, during the meeting, DSP Debejian told Plaintiff that in order to "satisfy" Directive 4421, Plaintiff would need a "court rule, court order, statute of limitations, or other legal deadline" showing "that the legal mail must be sent prior to receipt of the next week's free postage allowance." (Dkt. No. 103-25, at 1). On or about October 8, 2021, and again on October 12, 2021, DSP Debejian denied Plaintiff's requests for legal copies and advance postage for legal mail and returned Plaintiff's legal mail. (*Id.* (DSP Debejian denying request but advising that he had "been in contact with counsel's office as per the directive" and that "[t]hey are aware of the situation"); Dkt. No. 45, ¶¶ 57–58).

In the Amended Complaint, Plaintiff states that on October 22, 2021, he "sent notice" to Sheehan "about problems with legal copies and legal mail, and denied access to the courts," (Dkt. No. 45, ¶ 60), and asserts that he  continued to have difficulty obtaining postage and photocopies in connection with his ongoing cases in November and December 2021. (*Id.* ¶¶ 70–75).

In December 2021, Plaintiff received the following letter from Sheehan:

> Acting Commissioner Annucci has asked me to respond to your letter dated October 22, 2021, to Library Services regarding your claims of photocopies and legal mail issues at Marcy Correctional Facility.

> Concerning advances for photocopies, please be advised that the facility considers approving each advance request in accordance with Directive No. 2788. In many instances a document required by the court can be replicated longhand.

> It is recommended that when requesting assistance of any type from the facility, pertaining to a legally imposed deadline, whether it is a court order or a statute of limitations issue, it is well-defined and understandable.

(Dkt. No. 103-26, at 1; Dkt. No. 45, ¶ 76). Sheehan referred Plaintiff to DSP Debejian's October 8, 2021, memorandum concerning Plaintiff's "legal mail issues" and to Directive 4040, regarding available "channels of problem resolution." (Dkt. No. 103-26, at 1).

Plaintiff asserts that on January 12 and 17, 2022, he sent requests to DSP Debejian for "132 total pages of advance legal copies or civil filing a divorce packet with the Oneida County Supreme Court." (Dkt. No. 45, ¶¶ 83–84). According to Plaintiff, DSP Debejian and "Albany Counsel" denied his "divorce copies" on January 18, 2022. (*Id.* ¶ 85). Plaintiff avers in early March 2022, he received approval for copies and for mailing of papers for his divorce action. (*Id.* ¶¶ 102–05).

Plaintiff states that on January 21, 2022, he "sent notice to DSP Debejian about needing advance legal copies and legal mailing" to comply with a February 4, 2022 deadline in an order to show cause issued by the Albany County Supreme Court. (Dkt. No. 45, ¶ 87; Dkt. No. 103-29, at 2 (request seeking 3,224 copies and "enough legal size envelopes to mail as said copies as required by the Court and advances for postage and such")). DSP Debejian denied Plaintiff's request in a memorandum dated February 1, 2022, explaining that although Plaintiff had supplied "the order to show cause as requested to prove a deadline," a determination could not be made "based on the order alone," and that Plaintiff's request was therefore denied. (Dkt. No. 103-30, at 1). DSP Debejian advised Plaintiff, however, that if he had "documents that may shed light of [sic] any rule, court order, statute of limitation, or other legal deadline applicable to your circumstance," he could submit them for review. (*Id.*).

DSP Debejian retired in May 2022, at which point, Patrick Collver assumed the role of Acting DSP. (Dkt. No. 103-22, ¶ 1; Dkt. No. 103-13, ¶ 1). On May 4, 2022, Plaintiff "[a]dvised" DSP Collver that he "needed approval for copies 3182 pages and legal mail advances" for an Albany County Supreme Court amended order to show cause. (Dkt. No. 45, ¶ 113). On May 10, 2022, DSP Collver denied Plaintiff's request. (*Id.* ¶ 114).

On May 10, 2022, Plaintiff sent DSP Collver a request for 262 copies in connection with a complaint alleging claims under federal civil rights statutes. (*Id.* ¶ 115). On May 11, 2022, Plaintiff sent a "letter/notice" to DSP Collver "about denial of copies and mail service." (*Id.* ¶ 118). That same day, Plaintiff received the following memorandum (dated May 6) from DSP Collver:

> Upon consultation with Counsel's Office I am advising you of the following:
>
> 1. I will authorize an advance for enough copies for the Order to Show Cause to be served on the Superintendent and Acting Commissioner. I will need you to specify exactly how many pages you will need for each.
>
> 2. I will not authorize an advance for any exhibits. You will need to seek leave from the court for copies of exhibits as your account reflects $3,822.28 of uncollected advances for legal copies.

(Dkt. No. 103-14, at 1).

Between May 20 and 27, 2022, Plaintiff sent DSP Collver requests for copies in connection with his civil rights action, legal mail advances, and for copies of 3,640 "pages." (Dkt. No. 45, ¶¶ 124–26; Dkt. No. 103-17, at 1).

In a June 13, 2022, letter to Erin Pfendler, the Marcy Incarcerated Grievance Program Supervisor, Plaintiff asked Pfendler "if she could tell him as to what happen to his grievance filed in Collins on or/about April 27, 2021." (Dkt. No. 45, ¶ 139). In response, Pfendler advised

Plaintiff to write to Collins and to "write her back" if he did not receive a response. (*Id.* ¶ 140).

On or about June 21, 2022, Plaintiff wrote to the Collins grievance supervisor and requested

information "as to the status of a grievance [he] filed on/or about April 27, 2021 while being at

Collins C.F. it was based being denied the right to advance legal copies and advanced legal

mail." (Dkt. No. 133, at 48). Plaintiff explained that the grievance had not "been resolved prior

to [his] leaving" and he had "not heard from anyone as to what if anything was happening to said

grievance." (*Id.*). Plaintiff states that he received no response to his letter. (Dkt. No. 45, ¶ 144).

On September 1, 2022, Plaintiff sent a letter to Pfendler asking her to look into the grievance he

filed at Collins. (*Id.* ¶ 167). On October 27, 2022, Plaintiff received a letter from Defendant

McKoy, DOCCS deputy commissioner of programs:

> This is in response to your letter regarding your mail.
>
> As a result of you [sic] correspondence, Marcy Correctional Facility
> (CF) was contacted and Deputy Superintendent of Programs (DSP)
> Fredrickson, indicated that all outgoing and incoming mail is
> processed in accordance with Departmental Directive #4421,
> "Privileged Correspondence" and Department Directive #4422,
> "Incarcerated Individual Correspondence Program". Legal Mail
> advances are processed the same day they are received. DSP
> Fredrickson also indicated that you were informed to stop writing
> extraneous information on your disbursement requests and you were
> also asked to put the correct dates on your requests for advance
> postage, so it doesn't appear that your request are not being
> processed in a timely fashion. And additional concerns regarding
> this matter should be addressed to DSP Fredrickson, who is in the
> best position to assist you.

(*Id.* ¶ 171-g).

## IV.    MOTION FOR SUMMARY JUDGMENT

### A.    Standard of Review

Under Rule 56(a), summary judgment may be granted only if all the submissions taken

together "show that there is no genuine issue as to any material fact and that the moving party is

11

entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears

the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*,

477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the

governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of

New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248). The movant may

meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway

Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where

the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to

return a verdict in his or her favor' an essential element of a claim" (quoting *In re Omnicom

Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

     If the moving party meets this burden, the nonmoving party must "set forth specific facts

showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*,

477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a

summary judgment motion, the district court must construe the facts in the light most favorable

to the non-moving party and must resolve all ambiguities and draw all reasonable inferences

against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

Still, the nonmoving party "must do more than simply show that there is some metaphysical

doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts

to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where the plaintiff proceeds pro se, the Court must read his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Jordan v. New York*, 773 F. Supp. 2d 255, 268 (N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); *see also Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

### B. Analysis

#### 1. Relevant Time Period

Defendants assert that the relevant time period for this case is July 15, 2021, the date Plaintiff was transferred from Collins to Marcy, through November 15, 2022, the date Plaintiff filed the Amended Complaint, and thus solely concerns the denial of legal copies and postage advances for legal mail that Plaintiff allegedly experienced while at Marcy—but not at Collins. (Dkt. No. 103-2, ¶¶ 1, 3). Plaintiff disputes this and maintains the alleged violations began on or about April 4, 2021, while he was confined at Collins, continued at Marcy, then at Mid-State Correctional Facility, and continue to the present. (Dkt. No. 132-3, ¶¶ 1, 3).

The principal "evidence" Defendants rely on in support of their contention that the Amended Complaint "alleges wrongdoing associated with the conditions of his confinement at Marcy, not Collins," is this Court's March 2, 2023 Decision and Order ("March 2023 Order")

reviewing the Amended Complaint under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). (Dkt. No. 103-2, ¶ 1 (citing Dkt. No. 44, at 6)).[6] On page 6 of the March 2023 Order, the Court provided an "Overview of the Amended Complaint," and introduced it as follows: "As with the original complaint, plaintiff's amended and supplemental complaint alleges wrongdoing associated with the conditions of his confinement at Marcy C.F., and reasserts Section 1983 claims against the same . . . defendants." (Dkt. No. 44, at 6). Although this sentence unfortunately omits Collins, read in context and with reference to the Amended Complaint, it is evident this omission was a simple oversight. Not only do the defendants it refers to include Sheehan and Leone, whose involvement, according to Plaintiff, began while he was at Collins, but the next sentence expressly notes that the Amended Complaint "includes *each of the allegations set forth in the original complaint*," (*id.* at 6–7 (emphasis added)), which the Court previously described as containing "allegations of wrongdoing during [Plaintiff's] incarceration at Collins . . . and Marcy," (Dkt. No. 10, at 4). The Court therefore concludes that the omission of Collins from the March 2023 Order was, at most, a clerical omission and by no means a preclusive finding regarding the relevant time period for this case.

More importantly, as even a cursory review reveals, the claims in the Amended Complaint are centered on Plaintiff's efforts to obtain legal copies and postage advances for legal mail at both Collins and Marcy. (*See generally* Dkt. No. 45). Closer inspection shows that it refers to Collins more than forty times and that its "Statement of Facts" begins with Plaintiff's transfer from Attica Correctional Facility to Collins on or about April 4, 2021. (*Id.* at 25).

---

[6] Defendants also cite the Amended Complaint and a page from Plaintiff's deposition in support of their argument. (Dkt. No. 103-2, ¶ 1 (citing Dkt. No. 45; Dkt. No. 103-5, at 30)).

Defendants' reliance on Plaintiff's deposition does not support their position as to the relevant time period, either. In the section of the deposition that Defendants cite, defense counsel says: "I'm going to go through each of the defendants" and "I'm going to have you tell me what role they played in denying your access to the courts." (Dkt. No. 103-5, at 29–30). When defense counsel asks Plaintiff whether he has any claims about Defendant Debejian, who is employed at Marcy, "with respect to your time at Collins," Plaintiff responds: "No, he wasn't here, correct . . . As a matter of fact, there's nobody in here claims against Collins listed as a defendant." (*Id.* at 30). This is correct—the defendants in this case include three DOCCS officials (Sheehan, Leone, and McKoy) and two Marcy employees (Debejian and Collver), but no Collins employees. (Dkt. No. 45). However, defense counsel next asks Plaintiff about Defendant Sheehan and whether Plaintiff has "any claims with respect to access to courts for your time at Collins." (Dkt. No. 103-5, at 31). Plaintiff responds, in relevant part: "Its going to be in the numbered section" of the Amended Complaint, "April 4, '21, I see April 9th also. Cathy Sheehan, yes, April 17th, 2021, I sent her notice." (*Id.*). As Plaintiff's interaction with Sheehan, according to the Amended Complaint, began while he was at Collins, Defendants' reliance on Plaintiff's deposition also proves unavailing.

The Court therefore concludes that Plaintiff has shown that the relevant time period began on or about April 4, 2021, when he was transferred to Collins. (Dkt. No. 45, at 156); *see, e.g.*, *PH Int'l Trading Corp. v. Nordstrom, Inc.*, No. 07-cv-10680, 2011 WL 13557658, at *2, 2011 U.S. Dist. LEXIS 175934, at *4 (S.D.N.Y. Oct. 5, 2011) (looking to the allegations in the complaint regarding the date the parties' relationship began and the time of the alleged breach in order to determine relevant time period for purposes of discovery); *Schiavone v. Ne. Utils. Serv. Co.*, No. 08-cv-429, 2009 WL 801744, at *1, 2009 U.S. Dist. LEXIS 24517, at *3–4 (D. Conn.

Mar. 25, 2009) (same). However, the Court agrees that the time period ends on November 15, 2022, the date the Amended Complaint was signed, (Dkt. No. 45, at 156), as there was no supplemental pleading filed in this case.

### 2.     Personal Involvement – Collins

Having concluded that the relevant time period in this case began when Plaintiff was transferred to Collins, the Court considers Defendants' argument that there is no evidence that Sheehan or Leone, the only two named Defendants who had any interaction with Plaintiff while he was at Collins, were personally involved in interfering with Plaintiff's legal mail or in denying Plaintiff access to the Courts. (Dkt. No. 103-1, at 16–20, 28–29). Plaintiff opposes Defendants' motion. (Dkt. No. 132-4, at 36–42).

It is well-settled that, to establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). A plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). There is "no special rule for supervisory liability," and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). The Second Circuit has explained that "[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue because the elements of different constitutional violations vary," and "[t]he violation must be established against the supervisory official directly." *Id.* (second alteration in original) (internal quotations and citations omitted).

### a.    Mail Tampering (Interference with Legal Mail)

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment" *Bacon v. Phelps*, 961 F.3d 533, 543 (2d Cir. 2020) (internal citations omitted). As the Second Circuit has explained, this right is violated if a prison "regularly and unjustifiably" interferes with an incarcerated individual's legal mail. *Ahlers v. Rabinowitz*, 684 F.3d 53, 64 (2d Cir. 2012) (quoting *Davis v. Goord*, 320 F.3d 346, 351 (2003)). Unconstitutional interference with mail occurs when, for example, prison officials engage in "an ongoing practice of unjustified censorship" or delay the delivery of mail to a prisoner in a way that "cause[s] him to miss court deadlines or in any way prejudice[s] his legal actions." *Davis*, 320 F.3d at 352.

### b.    Denial of Access to Courts

The First Amendment right to petition the government, which applies to the states through the Fourteenth Amendment, "extends to all departments of the Government, including the Courts." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017) (citation omitted). "A plaintiff's constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress." *Id.* (citation and internal quotation marks omitted). Circuit Courts of Appeals have "recognized two variants of right-of-access claims": (1) "forward-looking suits," in which plaintiffs allege that "'systemic official action' frustrated their ability to file a suit," and (2) "backward-looking" claims "covering suits that 'cannot now be tried (or tried with all material evidence), no matter what official action may be in the future.'" *Sousa v. Marquez*, 702 F.3d 124, 127–28 (2d Cir. 2012) (citation omitted). A plaintiff may have a backward-looking right-of-access claim, for example, where the official action "caused the loss or inadequate settlement of a meritorious case." *Id.* at 128.

Moreover, the Second Circuit has not recognized the viability of backward-looking right-of-access claims. *See id.* (noting that the "viability of backward-looking right-of-access claims is

17

far from clear in this Circuit" and declining to decide the issue); *Kern v. Contento*, No. 21-cv-1672, 2022 WL 1112767, at *3, 2022 U.S. App. LEXIS 10073, at *7 (2d Cir. Apr. 14, 2022) (summary order) (noting that *Sousa* "declined to decide whether to follow other circuits in recognizing a backward-looking claim").

### c.    Sheehan and Leone

As discussed above, the only named Defendants with any connection to Plaintiff's difficulties obtaining copies and advance legal postage while he was at Collins, are two DOCCS officials: Sheehan and Leone.[7] Viewed in the light most favorable to Plaintiff, the evidence of their involvement at this time is: (1) Plaintiff's April 17, 2021 letter to Sheehan reporting that he "not receiving photocopies of legal material and legal cases from the Law Library at Collins," (Dkt. No. 133, at 3); and (2) Leone's May 6, 2021 response (on Sheehan's behalf), (*id.* at 10). To the extent Plaintiff asserts claims of mail tampering and denial of access to the courts against Sheehan arising from her referral of Plaintiff's April 17, 2021, letter to Leone for response, he has failed to present evidence from which a factfinder could find Sheehan personally involved. *See Vega v. Artus*, 610 F. Supp. 2d 185, 199 (N.D.N.Y. 2009) (stating that facility superintendent's act of "referring [the plaintiff's] letters to staff for investigation is not sufficient to establish [his] personal involvement"); *Viera v. Sheehan*, 531 F. Supp. 3d 666, 672 (W.D.N.Y. 2021) (finding that the defendant's "receipt" of the plaintiff's "letter and referral of the matter to a subordinate does not establish his personal involvement in the alleged failure to process Plaintiff's mail"). And, although an official's response to a letter may constitute evidence of personal involvement, *see, e.g.*, *Young v. Choinski*, 15 F. Supp. 3d 172, 191 (D. Conn. 2014)

---

[7] McKoy is also a DOCCS official and is named as a Defendant. However, there is no evidence of his involvement while Plaintiff was at Collins. Indeed, other than being copied on a June 5, 2022, letter Plaintiff sent to Defendant Collver, (Dkt. No. 45, ¶ 132), the first evidence of any involvement by McKoy is a letter to Plaintiff dated October 22, 2022, (*id.* ¶ 117-g; Dkt. No. 133, at 53). Accordingly, the Court does not consider McKoy here.

("[W]hen a supervisory prison official receives a particular grievance, personally reviews it, and responds and/or takes action in response, such conduct may constitute sufficient 'personal involvement' to establish individual liability for the alleged constitutional violation."), the Court concludes that Leone's May 6, 2021 letter responding on Sheehan's behalf, (Dkt. No. 133, at 10), fails to raise an issue of fact as to any involvement by Leone in interfering with legal mail or denying Plaintiff access to the courts.

In his April 17, 2021, letter to Sheehan, Plaintiff explained that he needed to "notify 63" different "agencies, courts and government officials that [he has] moved" from Attica to Collins,, but that Collins has "denied access to copies," that the "procedure changes" each time he goes to the library, and that the DSP and Superintendent had not responded to his inquiries. (Dkt. No. 133, at 3). Plaintiff also wrote that he was having a "problem with obtaining legal copies and cases as need to work on [his] several legal matters." (*Id.*). In her response on Sheehan's behalf, Leone noted Plaintiff's claim of "not receiving photocopies of legal materials and legal cases" from the Collins law library, referred Plaintiff to DSP Schneider's April 27, 2021 memo[8] should he require advance funds and to DOCCS "Directives 4483 & 4421" if he had "any other concerns," advised Plaintiff that a letter to DOCCS "Central Office staff" did not replace a facility's "problem resolution channels," and encouraged Plaintiff to use the grievance process. (*Id.* at 10).

Although it is undisputed that Plaintiff was litigating 18 cases during the relevant time period, Plaintiff does not cite any specific case in connection with denial of legal copies (the subject of his letter to Sheehan and Leone's response) while at Collins. There is evidence that on May 25, 2021, DSP Schneider denied Plaintiff's May 17, 2021 request for an advance on postage

---

[8] This memo does not appear to be in the record.

for documents Plaintiff sought in connection with an "Order to Show Cause" issued by the

Monroe County Supreme Court, in an Article 78 proceeding where Plaintiff was "seeking to

compel" the Monroe County Sheriff to comply with a Freedom of Information Law request.

(Dkt. No. 134-1, at 1, 73 (*Dean v. Baxter, Monroe County Sheriff*, filed in Monroe County

Supreme Court, Index No. 2021-537); Dkt. No. 45, ¶¶ 12–13). Although there is evidence that

DSP Schneider also denied other requests regarding legal copies or mail, (*see* Dkt. No. 133, at 8

(May 4, 2021 memorandum regarding "Legal Copies" and denying "requested advance"); *id.* at

14 (May 24, 2021 memorandum regarding "Legal Copies" and denying request for "advances for

legal mail")), nothing in the record ties those requests to any of the cases Plaintiff was litigating

at that time or to conduct by Leone. Thus, no reasonable factfinder could conclude that Leone, in

responding to Plaintiff's letter regarding difficulties obtaining legal copies, was personally

involved in interfering with Plaintiff's legal mail or obstructing Plaintiff's access to the courts in

connection with his Monroe County Article 78 proceeding or any other case.[9] Accordingly,

Defendants Sheehan and Leone are dismissed for lack of personal involvement.

### 3.    Exhaustion of Administrative Remedies

Defendants move for summary judgment on the ground that Plaintiff failed to exhaust his

administrative remedies prior to filing this action, as required by the Prison Litigation Reform

Act ("PLRA"), 42 U.S.C. § 1997e(a). (Dkt. No. 103-1, at 11–16). In support of their motion,

Defendants have filed declarations by Joshua Becker and Erin Pfendler, the Incarcerated

Grievance Program Supervisors ("IGPS") at Collins and Marcy, respectively. (Dkt. Nos. 103-11,

103-31). Both Becker and Pfendler state that during the relevant time period, Plaintiff filed no

---

[9] Nor is there evidence of any harm to the Article 78 proceeding as Plaintiff subsequently obtained approval from DSP Schneider on or about July 6, 2021, for copies and mailings in connection with "a new Order to Show Cause from the Monroe County Supreme Court." (Dkt. No. 45, ¶¶ 20–21, 23; *see also* Dkt. No. 133, at 39 (approving advances for legal mail and copies)).

"grievances at all." (Dkt. No. 103-11, ¶ 8; Dkt. No. 103-31, ¶ 8). Plaintiff responds that he "filed numerous grievances that never went anywhere" and argues that his reports to DOCCS and other state officials regarding his problems with legal copies and legal mail satisfy the PLRA's exhaustion requirement. (Dkt. No. 132-4, at 14–16). Plaintiff also argues that there "is no working grievance system in Collins or Marcy." (*Id.* at 14–15).

The PLRA prescribes limitations on an inmate's ability to bring civil actions with respect to prison conditions. Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *abrogated on other grounds by Ross v. Blake*, 578 U.S. 632, 639–42 (2016).

Proper exhaustion of administrative remedies is dependent on the rules and regulations of the prison in which the grievance is filed; that is, an inmate of a New York State DOCCS facility must satisfy the requirements, including procedural and substantive requirements, set forth by DOCCS regulations to properly exhaust administrative remedies. *See Garcia v. Heath*, 74 F.4th 44, 46 (2d Cir. 2023); *see also Hayes v. Dahlke*, 976 F.3d 259, 268 (2d Cir. 2020) ("[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." (alteration in original) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007))).

Failure to exhaust available administrative remedies is an affirmative defense that must be raised by the defendants. *See Jones*, 549 U.S. at 216. Therefore, the defendants "bear the

initial burden of establishing the affirmative defense of non-exhaustion 'by pointing to "legally sufficient sources" such as statutes, regulations, or grievance procedures' which demonstrate that 'a grievance process exists and applies to the underlying dispute.'" *Williams v. Correction Officer Priatno*, 829 F.3d 118, 126 n.6 (2d Cir. 2016) (quoting *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015)). "If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact." *Hubbs*, 788 F.3d at 59 (citing *Hemphill v. New York*, 380 F.3d 680, 687–88 (2d Cir. 2004), *abrogated on other grounds by Ross*, 578 U.S. at 639–42).

Under DOCCS regulations, an inmate must generally submit a grievance within twenty-one days of an alleged occurrence, *see* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1), but may request an extension within forty-five days of the alleged occurrence, *see id.* § 701.6(g)(1)(i)(a). An inmate's grievance "should contain a concise, specific description of the problem and the action requested." *Id.* § 701.5(a)(2). This requirement, the Second Circuit has held, is analogous to the requirements of notice pleading. *See Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006); *see also Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) ("The PLRA's exhaustion requirement is . . . is not dissimilar to the rules of notice pleading."). "As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief[;] [a]ll the grievance need do is object intelligibly to some asserted shortcoming." *Johnson*, 380 F.3d at 697 (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

Subsequent procedural exhaustion of a filed grievance then involves three steps: (1) the grievance is reviewed and resolved by the Inmate Grievance Resolution Committee ("IGRC"),

N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(b); (2) the grievant appeals an adverse decision of the IGRC to the superintendent of the facility at which the grievance was filed, *id.* § 701.5(c); and (3) the grievant appeals an adverse decision of the superintendent to the Central Office Review Committee ("CORC"), *id.* § 701.5(d).[10] Upon the rendering of CORC's decision, or if CORC fails to respond to a grievance within thirty days of its appeal under the third step of the process, the grievant has exhausted administrative remedies. *See Hayes*, 976 F.3d at 269–70.

"Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." *Ross*, 578 U.S. at 638. The Supreme Court in *Ross v. Blake* identified, inexhaustively, *see Williams*, 829 F.3d at 123 n.2, "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross*, 578 U.S. at 643. "First, an administrative remedy may be unavailable when 'it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates.'" *Williams*, 829 F.3d at 123 (quoting *Ross*, 578 U.S. at 643). "Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.'" *Id.* (quoting *Ross*, 578 U.S. at 643). "Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 124 (quoting *Ross*, 578 U.S. at 644).

Here, Defendants have established that the grievance procedures contemplated by DOCCS regulations applied to inmates at Collins and Marcy. [11] (Dkt. No. 103-2, ¶¶ 12–14; Dkt. No. 103-11, ¶ 5). The question before the Court, then, is whether Plaintiff has raised a material

---

[10] Complaints of "harassment," which is not applicable here are subject to a different, expedited procedure. *See* N.Y. Comp. Codes R. & Regs. tit. 7, §§ 701.5(a)(2), 701.8.

[11] While Plaintiff denies this factual assertion, he does not meaningfully dispute that DOCCS grievance procedures applied at Collins or Marcy but instead asserts there are problems with staff interference and retaliation. (Dkt. No. 132-3, ¶¶ 11–12).

issue of fact as to (1) whether he exhausted these administrative remedies, and (2) if he did not, whether the remedies were available to Plaintiff within the meaning established by *Ross* and *Williams*.

### a.    Alleged Grievances at Collins

#### i.    April 27, 2021 Grievance and Exhaustion Based on Continuing Violation

Although there are no named defendants that could be held responsible for the alleged constitutional violations at Collins, the Court has considered Plaintiff's allegation of having filed an April 27, 2021 grievance at Collins in order to assess whether there was a grievance that could support exhaustion based on a continuing violation.

Plaintiff asserts that he filed a grievance on April 27, 2021, at Collins "about being denied to make legal copies and send legal mail." (Dkt. No. 133, at 46). At his deposition, Plaintiff stated that he had a "copy of the grievance," (Dkt. No. 103-5, at 81–82), but there is no copy of the grievance in the record before the Court. According to the verified amended complaint, Plaintiff filed this "Inmate Grievance" on April 27, 2021, "with the IGRC Office at Collins by facility mail as required,"[12] (Dkt. No. 45, ¶ 7; *see also* Dkt. No. 103-5, at 80 (testifying that on April 27, 2021, he "filled the grievance out and put it in the mailbox address to IGRC")), but never received any response, (Dkt. No. 45, ¶ 7). Also, according to the verified Amended Complaint, on April 27, 2021, Plaintiff "sent a follow up notice to DSP Schneider about legal copies and legal mail . . . and attached a copy of the Inmate Grievance filed," (Dkt. No. 45, ¶ 7; *but see* Dkt. No. 133, at 6 (DSP Schneider's response acknowledging his receipt of

---

[12] In his declaration, Becker the Collins Grievance Supervisor states an inmate can file a grievance "by submitting their grievance complaints in a sealed envelope to ensure confidentiality. An Incarcerated Individual can deposit a grievance complaint, addressed to the Incarcerated Grievance Program office, in the intra-facility mailbox that is located on their housing unit." (Dkt. No. 103-11, ¶ 6).

Plaintiff's April 27 letter does not refer to the grievance that purportedly accompanied the letter)).

Plaintiff has also adduced some evidence that he followed up on the grievance. Plaintiff testified that he subsequently wrote to the "superintendent at Collins, didn't get a response" and "filed an appeal with the superintendent at Collins, didn't get a response" and that he undertook these actions "in '21."[13] (Dkt. No. 103-5, at 80–81). In a letter dated June 13, 2022, more than a year after purportedly filing the grievance, Plaintiff sent a letter to Pfendler, the Marcy grievance supervisor, inquiring into "the status of a grievance [he] filed on or about April 27, 2021 at Collins Correctional Facility, about being denied to make legal copies and send legal mail." (Dkt. No. 133, at 46). On Pfendler's recommendation, (*id.* at 47), Plaintiff sent a letter to the Collins Grievance Supervisor, "requesting information as to the status of a grievance [he] filed on/or about April 27, 2021 while" at Collins and described the grievance as "based [sic] being denied the right to advance legal copies and advanced legal mail," (*id.* at 48 (letter dated June 21, 2022)). On September 1, 2022, Plaintiff notified Pfendler that he had not received a response from Collins and inquired how to proceed. (Dkt. No. 133, at 49). On June 15, 2023, Plaintiff testified that he "recently" sent a letter to the Central Office Review Committee regarding the April 27, 2021 grievance. (Dkt. No. 103-5, at 82).

Defendants dispute Plaintiff's assertion that he filed a grievance on April 27, 2021, or at any other time while he was at Collins. In a declaration, Becker, the Collins Grievance Program Supervisor states that Collins has no record of this grievance and that Plaintiff filed no

---

[13] Plaintiff also testified that he wrote "[t]he superintendent" and told her that he wanted "to know what happened to the letter that [he] wrote her in '21, about the missing . . . grievance that [he] never got a response from" and that the superintendent said "can't find any record of it" and told Plaintiff to write "a note basically what the grievance is about" and that she would "see if" she could locate it or come up with . . . some type of response . . . as to what happened" but that the superintendent has not responded further. (Dkt. No. 103-5, at 83–84).

grievances "while incarcerated at Collins from April 2021 through July 2021." (Dkt. No. 103-11, ¶ 8). In addition, none of the memoranda issued by DSP Schneider following Plaintiff's purported filing of the grievance (and sending a copy to DSP Schneider) references a grievance. (Dkt. No. 133, at 6, 8, 14, 39).

In *Williams v. Correction Officer Priatno*, the Second Circuit found that when a grievance is delivered by an inmate in a Special Housing Unit to a correction officer for filing and that grievance is never subsequently filed or answered, DOCCS "regulations do not adequately outline the process to appeal or otherwise exhaust administrative remedies." 829 F.3d at 124. "On their face," the Second Circuit held, "the regulations only contemplate appeals of grievances that were actually filed." *Id.* And under the circumstances in that case, "the grievance procedures that were technically available to [the plaintiff] so opaque and confusing that they were, 'practically speaking, incapable of use,'" and therefore, "in giving his grievance to the correction officer, [the plaintiff] exhausted all administrative remedies that were available to him." *Id.* at 126 (quoting *Ross*, 578 U.S. at 643).

However, "mere contentions or speculation" regarding mishandling of a grievance "do not create a genuine issue of material fact when there is no evidence to support the allegations." *Jackson v. Moore*, No. 21-cv-1001, 2023 WL 4710869, at *6, 2023 U.S. Dist. LEXIS 65814, at *15 (N.D.N.Y. Apr. 14, 2023) (quoting *Rodriguez v. Cross*, No. 15-cv-1079, 2017 WL 2791063, at *7, 2017 U.S. Dist. LEXIS 71337, at *19 (N.D.N.Y. May 9, 2017)), *report and recommendation adopted*, 2023 WL 4711091, 2023 U.S. Dist. LEXIS 126588 (N.D.N.Y. July 24, 2023)). Rather, a plaintiff must provide some corroboration of a claim that a grievance was submitted, such as evidence demonstrating when the grievance was written, the content of the grievance, how the plaintiff attempted to file the grievance, or that the plaintiff followed up with

prison officials on the disposition of the grievance. *See Simpson v. Price*, No. 19-cv-1413, 2022 WL 336540, at *3, 2022 U.S. Dist. LEXIS 20857, at *7–8 (N.D.N.Y. Feb. 4, 2022); *see also Stephanski v. Allen*, No. 18-cv-76, 2020 WL 806331, at *9, 2020 U.S. Dist. LEXIS 11028, at *22–25 (N.D.N.Y. Jan. 22, 2020) ("Although [the plaintiff] fails to proffer copies of the grievance(s) he attempted to file . . . , his claims are supported by evidence suggesting that he attempted to file a grievance . . . including: (1) [the plaintiff]'s deposition testimony; (2) [the plaintiff]'s letter to the . . . Grievance Committee; (3) [the plaintiff]'s letter to [a grievance supervisor]; (4) [a subsequent grievance]; and (5) [the plaintiff]'s Appeal Statement referring the Superintendent's decision to CORC for review."), *report and recommendation adopted*, 2020 WL 777268, 2020 U.S. Dist. LEXIS 26918 (N.D.N.Y. Feb. 18, 2020).

As discussed, although Plaintiff does not name any Collins staff members as defendants in this case, he has sued the two DOCCS officials with whom he corresponded while at Collins: Sheehan, DOCCS Deputy Commissioner and Counsel; and Leone, DOCCS Supervising Librarian and Law Library Coordinator. Plaintiff could not recall who, if anyone, he named in the April 27 grievance, but "[t]he New York IGP regulations do not state that a prisoner's grievance must name the responsible party." *See Espinal v. Goord*, 558 F.3d 119, 126 (2d Cir. 2009). "[T]he IGP regulations offer the general guidance that a grievance should 'contain a concise, specific description of the problem,' and the complaint form does not instruct the inmate to name the officials allegedly responsible for misconduct." *Id.* (citing N.Y. Comp. Codes R. & Regs., tit. 7, § 701.7(a)(1)(i)); *see also White v. Williams*, No. 9:12-cv-1775, 2016 WL 4006461, at *5, 2016 U.S. Dist. LEXIS 81972, at *13 (N.D.N.Y. June 22, 2016) ("[I]nsofar as Plaintiff's supervisory claims relate to underlying conduct that was the subject of a fully exhausted grievance process, a separate grievance detailing the supervisory liability, or specifically naming

the supervisors, is not a prerequisite to suit."), *report and recommendation adopted*, 2016 WL 4005849, 2016 U.S. Dist. LEXIS 96337 (N.D.N.Y. July 25, 2016); *Jones*, 549 U.S. at 217 ("[N]othing in the PLRA statute imposes a 'name all the defendants' requirement."); *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2008) ("[W]e are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.").

Here, even assuming that Plaintiff satisfied his burden with respect to an April 27 grievance about "being denied to make legal copies and send legal mail," Plaintiff has not shown that this falls within the exception the Second Circuit identified in *Johnson v. Killian*, pursuant to which a prior grievance might serve to exhaust "administrative remedies with respect to [a] continuing violation" of constitutional rights. 680 F.3d 234, 239 (2d Cir. 2012). In *Johnson*, the plaintiff filed and exhausted a grievance "concerning limitations on congregational prayer" at a Federal Correctional Institution in Otisville, New York. 680 F.3d at 236. The plaintiff's religious beliefs required congregational prayer five times a day, but the Otisville policy provided the prison chapel only once a day. *Id.* After the plaintiff exhausted his grievance, Otisville "substantially ceased enforcing the relevant policy." *Id.* at 236–37. Two years later, however, following the arrival of a new warden, the policy "restricting congregational prayer was reimplemented" and the plaintiff filed suit without filing a second grievance. *Id.* at 237.

Concluding that the plaintiff's first grievance was sufficient to exhaust his administrative remedies regarding his congregational prayer policy claim, the Second Circuit vacated the district court's dismissal of this claim. *Id.* In reaching this conclusion, the Circuit recognized that "[t]he purpose of the PLRA is to reduce the quantity and improve the quality of prisoner suits[,] and to afford corrections officials time and opportunity to address complaints internally before

allowing the initiation of a federal case" and found the plaintiff's prior grievance "provided the prison administration with notice of, and an opportunity to resolve, the same problem that would continue intermittently" through the two years that followed. *Id.* at 238 (quoting *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011)). It explained that because the issue the plaintiff "would have raised" in a second grievance—"the inadequacy of the spaces and times allotted for congregational prayer—was *identical* to the issue he exhausted" in his prior grievance, the plaintiff's prior grievance "was sufficient to exhaust his administrative remedies with respect to the continuing limitations on congregational prayer at FCI Otisville." *Id.* at 239. However, the Circuit expressly limited its holding "to cases in which a prior grievance identifies a specific and continuing complaint that ultimately becomes the basis for a lawsuit" and stressed "that generalized complaints regarding the conditions of an inmate's confinement will [not] suffice to shortcut the administrative remedy process." *Id.*

In this case, even viewed in the light most favorable to Plaintiff, the alleged April 27 grievance about "being denied to make legal copies and send legal mail," (Dkt. No. 133, at 46), suggests, at best, a generalized complaint about legal copies and legal mail at Collins. Thus, although Plaintiff contends that he continued to have difficulties obtaining legal copies and advance postage for legal mail there is no basis on which to conclude that an April 27 grievance was sufficient to exhaust claims arising at Marcy. *See Rose v. Annucci*, No. 16-cv-787, 2018 WL 2729259, at *6, 2018 U.S. Dist. LEXIS 67017, at *15 (N.D.N.Y. Apr. 19, 2018) (finding that while "hypothetical enforcement concerns may have been part of plaintiff's motivation at the time that he filed" prior grievances, he failed to show "that the issues raised" in prior grievances asserting that religious meal form "was an unconstitutional procedural requirement for his attendance at the Eid-Ul-Adha festival," challenging "the registration deadline for Ramadan,"

and asserting the "belief that he was being penalized for refusing to sign the Religious Meal Form," were "identical with" the plaintiff's later claim that he "signed the Religious Meal Form, but was penalized when he stopped attending group Ramadan meals and refused to take part in counseling"), *report and recommendation adopted*, 2018 WL 2727874, 2018 U.S. Dist. LEXIS 94735 (N.D.N.Y. June 6, 2018). Thus, even assuming Plaintiff exhausted administrative remedies regarding the April 27, 2021 grievance at Collins, it was not sufficient to place DOCCS officials at Marcy[14] on notice that Plaintiff was being wrongfully denied legal copies and advance postage for legal mail. Accordingly, the Court concludes that Plaintiff's alleged April 27, 2021 grievance fails to raise a triable issue of fact with respect to exhaustion.

### ii.       June 15, 2021 Grievance

During his deposition, Plaintiff testified that he did not file any grievances at Collins, other than the one he filed on April 27, 2021. (Dkt. No. 103-5, at 84–85). However, in the declaration Plaintiff filed in opposition to Defendants' motion for summary judgment, Plaintiff states that he filed "a grievance[] with Collins on . . . June 15, 2021" that was "related to issues with not being able to send 10 pieces of legal mail by advance on May 25, 2021, and was refused by Collins." (Dkt. No. 132-3, at 4, 8–9). "The 'sham issue of fact' doctrine 'prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony.'" *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) (emphasis omitted) (quoting *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013)). Thus, Plaintiff's contradictory declaration in insufficient to create a triable issue of fact as to whether he filed a second grievance while at Collins. And, in any event, Plaintiff offers no

---

[14] There appears to be little, if any, guidance in the Second Circuit concerning whether a prior grievance that identifies a specific and continuing complaint, could serve to exhaust administrative remedies as to claims arising at a *different* correctional facility.

evidence that would corroborate his filing of this grievance. Plaintiff cites his handwritten "Mail Log" as evidence that he filed this grievance, but it contains no supporting factual details and only states the following: "June 15, 2021, sent grievance and claim form superintendent." (Dkt. No. 136, at 24). Nor has Plaintiff provided copies of a June 15 grievance or any evidence of follow up. Accordingly, the Court finds Plaintiff's belated assertion regarding the filing of a second grievance at Collins fails to create a material issue of fact as to exhaustion.

### b.    Alleged Grievances at Marcy

#### i.    September 29, 2021 Grievance

The Amended Complaint alleges that on or about September 29, 2021, Plaintiff sent a letter to Patrick Reardon, the Superintendent of Marcy, regarding Plaintiff's "problems with" being "denied access to the Courts" and stating that Plaintiff was enclosing a grievance for "review and filing." (Dkt. No. 45, at 13, 34). In opposition to Defendants' motion for summary judgment, Plaintiff filed a copy of a September 30, 2021 letter he sent to Superintendent Reardon outlining the difficulties he was having with Debejian with respect to legal mail and legal copies and stating he has "enclosed a grievance to be filed, please." (Dkt. No. 142, at 40). There does not appear to be a copy of this grievance in the record and there is no evidence Plaintiff properly filed this grievance. In any event, sending a grievance to the superintendent does not comply with DOCCS's inmate grievance procedure. *See Beatty v. Goord*, 210 F. Supp. 2d 250, 255–56 (S.D.N.Y. 2000) ("[W]riting letters to . . . the [s]uperintendent . . . [is] not sufficient to comply with the Inmate Grievance Program") (citation omitted).

#### ii.    June 9, 2022 Grievances

During his June 15, 2023, deposition, Plaintiff was asked whether, after filing the April 27, 2021, grievance, he filed another grievance before April 19, 2023. (Dkt. No. 103-5, at 85). Plaintiff responded "no, I wouldn't have." (*Id.* at 84). Plaintiff explained that "the grievance that

31

I had out there was already running as far . . . as I knew" and that after the April 27, 2021

grievance, he "went over and above the grievance process and . . . started contacting everybody

. . . because obviously grievances weren't working." (*Id.* at 85).[15] Following the deposition,

Plaintiff sent a letter (dated the same day as the deposition) to defense counsel "to follow up on

some of the questions [he was asked] during the deposition."[16] (Dkt. No. 133-5, at 6). Plaintiff

explained that he reviewed his "mail log books to see if there was any grievance I filed while at

Marcy" and "came across some entries, and one is on June 9, 2022, that I sent a Grievance to

IGRC, two of them actually. One was about Collver and Debejian, as to advance legal mail and

legal copies. . . . The other one dealt with not receiving my monthly trust fund account

statements."[17] (*Id.* at 6–7). Plaintiff acknowledged, however, that he had only mentioned the

grievance regarding monthly statements in the Amended Complaint. (*Id.* at 7 (citing Dkt. No. 45,

¶ 136 ("June 9, 2022, Dean sent grievance to IGRC in person about missing monthly

statements.")). Even crediting the statements in Plaintiff's letter (which appears to be verified,

(*id.* at 14)), Plaintiff has not provided the Court with a copy of any information regarding how he

filed this grievance or any documentation of any such grievance; there is no evidence that he

made follow-up inquiries regarding a June 9, 2022 grievance, *see*, *e.g.*, *Gibbs v. Gadway*, No.

19-cv-281, 2019 WL 5191506, at *5, 2019 U.S. Dist. LEXIS 177879, at * (N.D.N.Y. Oct. 15,

---

[15] Plaintiff further testified:

> Q.    So after you got transferred to Marcy in July 2021, you didn't write any
>        grievances there about what was going on there as far as the mail
>        tampering and the access to courts?
>
> A.    No.

(Dkt. No. 103-5, at 86).

[16] The letter is dated June 15, 2023, the same day as the deposition. (Dkt. No. 133-5, at 6).

[17] There does not appear to be an entry in Plaintiff's mail logs, (Dkt. No. 136), concerning a grievance on June 9,
2022.

2019) (finding conclusory claim subject to dismissal where copies of grievance appeals allegedly filed were not submitted as evidence), *report and recommendation adopted*, 2020 WL 1227156, 2020 U.S. Dist. LEXIS 43719, at *7 (N.D.N.Y. Mar. 13, 2020). Accordingly, the Court finds Plaintiff has failed to identify a material issue of fact with respect to his purported June 9, 2022 grievance.

### iii.    Availability of Grievance System at Marcy[18]

Although Plaintiff has failed to raise a material issue of fact as to whether he filed any grievance at Marcy, the Court has, for the sake of completeness, considered his assertion that the administrative grievance process was "unavailable" to him at Marcy because prison officials took grievances and threw them away or retaliated when inmates filed grievances. (Dkt. No. 132-4, at 14–15; *see also* (Dkt. No. 103-5, at 83 (Plaintiff testifying that the grievances he filed at Marcy had "a habit of disappearing" and that he did not know "if it's the officers taking the grievances and throwing them away when they see who they're addressed to or what's going on")).

Defendants reply that Plaintiff's contention that there is no working grievance system at Marcy is "untrue and baseless." (Dkt. No. 160, at 13). As noted above, Defendants have filed a declaration by Pfendler, the Marcy Grievance Supervisor, who states that "Marcy currently has a fully functioning grievance process and had a fully functioning grievance process from July 2021 through November 2022," while Plaintiff was at Marcy. (Dkt. No. 103-31, ¶ 6). Pfendler further states that:

> Incarcerated Individuals housed in general population at Marcy are
> provided incarcerated grievance complaint forms and envelopes

---

[18] To the extent Plaintiff argues there was no working grievance system at Collins, the Court notes that in his declaration, Becker, the Grievance Supervisory at Collins, states that, in accordance with DOCCS Directive 4040, Collins "had a fully functioning grievance process from April 2021 through July 2021," the time period when Plaintiff was at Collins. (Dkt. No. 103-11, ¶ 5). Plaintiff has presented no evidence disputing this statement.

> upon request. Incarcerated Individuals can file their grievance complaints by submitting their grievance complaints in a sealed envelope to ensure confidentiality. An Incarcerated Individual can deposit a grievance complaint, addressed to the Incarcerated Grievance Program office, in the intra-facility mailbox that is located on their housing unit.

(*Id.* ¶ 7).

In his declaration in opposition to summary judgment, Plaintiff states that "Marcy's grievance system" is nonexistent "as there is problems with staff interfering with grievances by intercepting the mail or stealing the grievance from the grievance office or retaliating for ones that had already been filed in the system." (Dkt. No. 132-3, ¶ 12). In support of this statement, Plaintiff filed seven nearly identical declarations by individuals incarcerated at Marcy, including one by Plaintiff himself, stating:

> [A]ll I/Is in Marcy who spent anytime here during those time frames, and still ongoing to date, know that if you put a grievance in the mailbox it will never make it to the Grievance office. The COs will remove it from the mailbox and destroy it and then retaliate against the person trying send the grievance, unless it is minor and note related to Marcy. There is no function grievance process per the Constitution of otherwise at Marcy . . . since at the very minimum July 2021.

(Dkt. No. 133-3, at 3). One of the declarations by an incarcerated individual states that on August 15, 2022, the declarant observed Plaintiff "being told by a Sgt. that he would have to move out of B-2 due to an issue that alleged he had with them about a grievance." (Dkt. No. 133-4, at 3). In his declaration in opposition to summary judgment, Plaintiff identifies the Marcy Sergeant who allegedly retaliated against him as Thomas Coomber, and states that Coomber moved him in retaliation for "a grievance Plaintiff tried to file on/or about August 12, 2022, by putting into the

mailbox in the B-2 Dorm."[19] (Dkt. No. 132-3, at 8). Plaintiff states that he had forgotten about the incident until another incarcerated individual reminded him on October 14, 2024. (*Id.*).

In the Second Circuit, "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Hemphill*, 380 F.3d at 688 (quotation marks omitted). And as to retaliation, "[i]t is well settled that a plaintiff's 'generalized fear' of retaliation 'is insufficient to excuse his failure' to file a grievance." *Hall v. Annucci*, No. 19-cv-5521, 2022 WL 3903255, at *9, 2022 U.S. Dist. LEXIS 156492, at *24–25 (S.D.N.Y. Aug. 30, 2022) (quoting *Little v. Mun. Corp., City of New York*, No. 12-cv-5851, 2017 WL 1184326, at *12, 2017 U.S. Dist. LEXIS 46944, at *32 (S.D.N.Y. Mar. 29, 2017)), *aff'd*, No. 22-2031, 2023 WL 7212156, 2023 U.S. App. LEXIS 29103 (2d Cir. Nov. 2, 2023).

In this case, the allegations in the declarations filed by Plaintiff and six individuals incarcerated at Marcy attesting to the destruction of non-minor grievances and retaliation "against the person trying to send the grievance" are devoid of factual detain and constitute generalized allegations of retaliation or interference. (Dkt. No. 133-3, at 3). There is no indication that the alleged retaliation for a grievance Plaintiff attempted to file in August 2022 has any connection to this action. Moreover, this cursory allegation is unaccompanied by facts suggesting threats or intimidation, and was insignificant insofar as Plaintiff admittedly did not recall it two years later. (Dkt. No. 132-3, ¶ 17).

The "sworn statements" by Plaintiff and the six other inmates that officers removed and destroyed grievances are insufficient to create a question of fact as to the availability of the

---

[19] Plaintiff does not suggest this grievance concerned legal copies or legal mail. Further, it does not appear to be mentioned in Plaintiff's mail log, (Dkt. No. 136), or anywhere else in the record.

Marcy grievance system. Neither Plaintiff nor the inmates who filed declarations offer any factual details or specific examples. "Courts within the Second Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations." *Blake v. Porlier*, No. 18-cv-1008, 2019 WL 7484052, at *5, 2019 U.S. Dist. LEXIS 173760, at *12–13 (N.D.N.Y. Oct. 4, 2019) (quotation marks omitted), *report and recommendation adopted*, 2020 WL 58613, 2020 U.S. Dist. LEXIS 1207 (N.D.N.Y. Jan. 6, 2020); *see also Khudan v. Lee*, No. 12-cv-8147, 2016 WL 4735364, at *6, 2016 U.S. Dist. LEXIS 122217, at *20 (S.D.N.Y. Sept. 8, 2016) (holding that under *Ross*, mere stand alone contentions of mail tampering without support and particularity cannot deem administrative remedies unavailable).

Moreover, although Plaintiff states in his declaration that there was a "problem" with staff at Marcy "retaliating for [grievances] that had already been filed," (Dkt. No. 132-3, ¶ 12), he does not state in his declaration or verified Amended Complaint that he did not file grievances at Marcy because he was afraid of retaliation. Thus, the Court finds Plaintiff has failed to identify a material issue of fact as to the exhaustion, or availability, of administrative remedies. Accordingly, Defendants' motion for summary judgment dismissing the Amended Complaint on the ground that Plaintiff failed to exhaust his administrative remedies is granted.

## V.    MOTION TO SEAL

Plaintiff moves to seal the sworn statements he submitted in opposition to Defendants' motion for summary judgment. (Dkt. No. 132 (citing Dkt. Nos. 133-3, 133-4)). Plaintiff asserts that disclosure of the contents of the statements "will cause retaliation and/or serious physical and mental harm" to the incarcerated individuals who provided the statements. (Dkt. No. 132-1, ¶ 4).

"[D]ocuments submitted to a court for its consideration in a summary judgment motion are –as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Lugosch v. Pyramid Co. of Onondaga Cnty.*, 435 F.3d 110, 121 (2d Cir. 2006). That "strong presumption" must be balanced against, as relevant here, "the privacy interests of 'innocent third parties.'" *Wiav Sols. Inc. v. HTC Corp.*, No. 19-cv-4978, 2021 WL 871415, at *1, 2021 U.S. Dist. LEXIS 43997, at *3 (S.D.N.Y. Mar. 9, 2021) (quoting *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001)). "However, the fact that a third party's privacy interests are at stake does not obviate the need for the proposed redactions to be narrowly tailored to protect those interests." *Id.*

Here, Plaintiff seeks wholesale sealing of each sworn statement, but as the statements are nearly identical and contain no identifying information other than the individual's "NYS DIN" number and name, there appears to be little, if any, privacy interest implicated by the substantive contents of the statement. However, as third parties making statements in support of Plaintiff, the publication of the names and DIN numbers of these incarcerated individuals may implicate certain privacy interests, and thus redaction is warranted. The Court therefore finds that the redaction of names and DIN numbers from each statement is necessary to protect each individual's privacy interest, "is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (quotation omitted). However, Plaintiff offers no explanation for sealing his own sworn statement, (Dkt. No. 133-3, at 16–17), a letter dated August 17, 2022, (Dkt. No. 133-4, at 4–5), a handwritten note from a Marcy officer to Plaintiff, (Dkt. No. 133-4, at 6), or the list of names and DIN numbers of individuals housed at Collins and Marcy at the same time as Plaintiff, (Dkt. No. 133-3, at 22). Thus, as Plaintiff has failed to

identify any interest that outweighs the strong presumption of access to these documents, his motion to seal these documents is denied.

Accordingly, Plaintiff's motion to seal is granted in part and denied in part as follows: the Clerk is directed to redact the names and DIN numbers from Dkt. No. 133-3, at 3–15, 20–21 and Dkt. No. 133-4, at 3 and unseal the remainder of both documents.[20]

## VI.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that the Report and Recommendation (Dkt. No. 145) is **REJECTED** as moot; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 103) is **GRANTED**; and it is further

**ORDERED** that as the time period for exhaustion of administrative remedies has expired, the Amended Complaint (Dkt. No. 45) is **DISMISSED**; and it is further

**ORDERED** that Plaintiff's motion to seal (Dkt. No. 132) is **GRANTED in part and DENIED in part** as follows: the Clerk is directed to redact the names and DIN numbers from Dkt. No. 133-3, at 3–15, 20–21 and Dkt. No. 133-4, at 3 and unseal the remainder of both documents; and it is further

**ORDERED** that the Clerk is directed to enter judgment accordingly, close this case, and serve a copy of this Order upon the parties in accordance with the Local Rules**.**

**IT IS SO ORDERED.**

Dated: <u>July 1, 2025</u>
　　　　Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[20] In the reply memorandum, counsel for Defendants disclosed the initials of the third parties who signed the sworn statements and quoted from the documents, which are, at present, not publicly filed. (Dkt. No. 160, at 13–15).